**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 1:21-cv-02715-RMR-NRN

ANDREW GLENN HUFF, an individual,

    Plaintiffs,

v.

THE CITY OF AURORA, COLORADO, and
OFFICER ALEXANDER ORD, in his individual capacity,

    Defendants.

## ORDER

This matter is before the Court on Defendant Alexander Ord's ("Officer Ord")[1] Motion to Exclude Expert Testimony of Natasha Powers, ECF No. 72. The Motion is fully briefed and ripe for review. For the following reasons, Officer Ord's Motion is GRANTED IN PART and DENIED IN PART.

### I.    BACKGROUND

On the evening of October 19, 2019, at 11:30 p.m., Aurora Police Officer Alexander Ord shot Andrew Huff ("Plaintiff") while Plaintiff stood in the window of his home with a rifle in his hand. Officer Ord, along with two other officers, state that they arrived at the residence to investigate a charge that Plaintiff and his brother had assaulted a third party

---

[1] Defendant The City of Aurora, Colorado did not join Officer Ord's motion or state a position as to the motion to exclude.

earlier in the day. The exact events of the evening are in dispute. There appears to be significant dispute over key facts such as: whether Plaintiff was aware the officers were police officers, whether the police officers announced themselves as police, and whether Plaintiff pointed the gun he held toward the officers. What is not disputed is that when Officer Ord saw the gun Plaintiff was holding, he fired five shots at Huff. One of the shots hit Plaintiff, passed through his rectum, and became lodged in his pelvis. Plaintiff alleges the shooting was unwarranted and therefore asserts an excessive force claim under the Fourth Amendment against Officer Ord and the City of Aurora.

In support of his claims, Plaintiff endorsed Natasha Powers ("Powers"), a former police officer, as a use-of-force expert witness to address standards of police conduct raised by the circumstances under which Officer Ord shot Plaintiff. Powers's report indicates that she will opine on three topics:

1. Did Ofc. Alexander Ord exercise good judgment?

2. Were Ofc. Alexander Ord's actions in concert with established police practices and guidelines?

3. Would reasonably trained and prudent police officers likely have performed in the same manner as Ofc. Alexander Ord did, given the same or similar circumstances as presented in this case?

ECF No. 72-1 at 3, Powers Report, dated January 23, 2023.

## II.   Legal Standard

Federal Rule of Evidence 702 requires that expert testimony is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The Court is the gatekeeper and the party offering such testimony bears the burden of demonstrating the

evidence is reliable and relevant. *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1149 (10th Cir. 2009).

The gatekeeper function requires the court perform "a two-step analysis." *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022); *see also 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).

First, the court must determine whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *Roe*, 42 F.4th at 1180 (quoting Fed. R. Evid. 702). The parties do not dispute Powers's qualifications, and the Court finds that this part of the analysis has been met.

Second, the proffered opinions must be assessed for reliability. *Id.* at 1180–81; Fed. R. Evid. 702(b)–(d). The opinions are reliable if the proponent of a qualified expert witness demonstrates to the Court that it is "more likely than not" that (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact or issue;" (b) the expert testimony is "based on sufficient facts or data;" (c) the expert testimony "is the product of reliable principles and methods;" and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

To demonstrate the reliability of an opinion that is based solely on an expert's experience, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes). Establishing

3

reliability does not require showing that the expert's testimony is indisputably correct. *United States v. Pehrson*, 65 F.4th 526, 540 (10th Cir. 2023); *see also Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003) (discussing how the opinion is tested against the standard of reliability, not correctness).

Under Rule 702, a court must also ensure that the proffered testimony is relevant and will assist the trier of fact. *See id.* at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122–23 (10th Cir. 2006). "Relevant expert testimony must logically advance[ ] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted). In assessing whether expert testimony will assist the trier of fact, a court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.' " *Id.* at 476–77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

Finally, Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### III. ANALYSIS

Plaintiff claims that Officer Ord shooting at him was an excessive use of force. Claims of excessive force by law enforcement officers are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386,

388 (1989). "The question is whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting [the officer], without regard to [the officer's] underlying intent or motivation." *Id.* at 397. When the allegedly excessive force is "deadly force" then the force is "justified only if a reasonable officer in the officer's position would have had probable cause to believe that there was a threat of serious physical harm to himself or others." *Cordova v. Aragon*, 569 F.3d 1183, 1192 (10th Cir. 2009) (emphasis added).

Plaintiff retained Powers to review the record of the case and render her opinions as to the actions of Officer Ord when he came in contact with Plaintiff. ECF No. 72-1 at 3. Powers concludes that Officer Ord's actions in shooting Plaintiff the evening of October 10, 2019 were not reasonable.

Ord moves to exclude various opinions by Powers, arguing generally that certain opinions: 1) usurp the function of the jury in deciding the facts; 2) opine as to the credibility of Officer Ord's position and testimony and as to credibility of statements of a witness; 3) state legal conclusions; 4) are irrelevant to the claims and defenses in this case, including containing various irrelevant opinions on violation of policy, procedure and practice and alluding to testimony not containing specialized knowledge; and 5) are not a product of sound methodology. ECF No. 72. The Court addresses each of Officer Ord's arguments in turn.

### A. Factual Assumptions/Conclusions of Fact

Officer Ord first argues that several of Powers's opinions attempt to establish facts. ECF No. 72 at 4. Officer Ord contends these opinions should be excluded because they

5

usurp the fact-finding mission of the jury. *Id.* Plaintiff responds that Powers's opinions do not attempt to establish new facts, rather they are permissible opinions based on factual assumptions and facts established by the record. ECF No. 76 at 6.

The Court must not allow an expert to testify on matters if his or her testimony would "usurp[ ] a critical function of the jury." *See United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993). Resolving conflicts in the evidence and reaching ultimate conclusions of fact are both functions exclusively reserved to the trier of fact. *United States v. Leach*, 749 F.2d 592, 600 (10th Cir. 1984). However, "[a]n expert may base his opinions on factual assumptions, and the 'full burden of exploration of the facts and assumptions underlying the testimony of an expert witness falls squarely on the shoulders of opposing counsel's cross-examination.'" *Cox v. Wilson*, No. 15-CV-0128-WJM-NYW, 2016 WL 11260309, at *2 (D. Colo. Oct. 20, 2016) (quoting *Smith v. Ford Motor Co.*, 626 F.2d 784, 799 (10th Cir. 1980)); *see also Est. of Strong v. Schlenker*, No. 17-CV-1276-WJM-SKC, 2019 WL 3252159, at *4 (D. Colo. July 19, 2019) (allowing expert to testify regarding his factual assumptions, as long as he presents them as such, rather than as his opinion on or a conclusion of fact).

Rather than rule on each specific opinion, the Court will set forth parameters on Powers's testimony regarding the facts in this case. The Court will permit Powers to testify as to her factual assumptions, provided they are presented as assumptions upon which Powers based her opinions. Indeed, many of Powers factual statements contain citations to the record and do not appear to be disputed. To the extent Powers bases her opinions on factual assumptions, Officer Ord's counsel is free to cross-examine Powers to explore

6

and challenge those factual assumptions. *See Smith v. Ford Motor Co.,* 626 F.2d at 799. However, to the extent Powers attempts to testify as to ultimate conclusions of disputed fact, such testimony will be excluded. At trial, the Court will entertain an objection to any of Powers's testimony that attempts to establish certain facts.

**B.     Witness Credibility**

Officer Ord also seeks to exclude Powers's opinions regarding Officer Ord's credibility as well as the credibility of Plaintiff's girlfriend, Leah Freeman ("Freeman"). ECF No. 72 at 6-9. Officer Ord asks that the following opinions be excluded as improperly opining on witness credibility:

- In "Opinions and Bases for Opinions", at Section (5) titled "Failure to identify themselves as law enforcement", Ms. Powers stated that "[i]t is common knowledge that when outside of a home or building, during darkness and the lights are on inside the home, any person looking out a front window, as in this case, would not be able to see who or what is going on outside. The view from the front window looking outside is called mirror effect or oneway glass effect. None of these officers' assumptions are reasonable." *See*, Ex. A at p. 13."

- In "Opinions and Bases for Opinions", at Section (5) titled "Failure to identify themselves as law enforcement", Ms. Powers went through the video statement given by Plaintiff's girlfriend, Leah Freeman ("Ms. Freeman"), immediately after this shooting. In that statement, Ms. Freeman repeatedly told the investigative officer that Plaintiff armed himself with a weapon after telling Ms. Freeman that police were outside. Ms. Freeman repeated this statement to the investigative officer several times. Ms. Powers attempted to "opine" that Ms. Freeman's statement to the investigative officer as to Plaintiff arming himself with a weapon after seeing the police outside the residence should not be considered as truth or not given much weight. Ms. Powers attempts to opine that "the questions that were asked to Freeman" "were not clear, nor were they direct." By providing an "opinion" as to how the trier of fact should view and consider Ms. Freeman's statements, Ms. Powers attempts to inject her testimony as to witness credibility but also usurps the province of the trier of fact as to the fact-finding mission. Ms. Powers' "opinion" as to Ms. Freeman's statements should be excluded and Ms. Powers

7

- should be barred from providing such an opinion at trial. *See*, Ex. A at pp. 13-14.

- In "Opinions and Bases for Opinions", at Section (6) titled "The Shooting", Ms. Powers stated "Officer Ord states that he saw Andrew Huff standing at the front window with a long gun in his hand. Officer Ord states, "he did not fire his weapon right away, rather he gave orders and waited for a response. (@COAHUFF 000575, @Ofc. Ord.vob). This statement is not true." *See*, Ex. A at p. 15.

- In the "Conclusion" Section, Ms. Powers stated, "[i]t's more astonishing that Ofc. Ord claimed he gave Andrew Huff time to surrender before he fired upon him, a fact that is not supported by his own body-worn camera. The actions of Ofc. Ord was unreasonable." *See*, Ex. A at p. 18.

ECF No. 72 at 7-8. Plaintiff responds that Powers's opinions are not opinions concerning credibility, but permissible opinions about the inaccuracy of documents. ECF No. 76 at 7.

Both parties agree that it is improper for witnesses to opine as to the credibility of other witnesses. Indeed, the Tenth Circuit has held that "the credibility of another is not an appropriate subject for expert opinion testimony." *United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014); *see also United States v. Samara*, 643 F.2d 701, 705 (10th Cir. 1981) (it is "the exclusive function of the jury to weigh the evidence and determine credibility."). This is because opinions regarding witness credibility would "usurp[ ] a critical function of the jury," would not assist the jury because it "can make its own determination of credibility," and would "unduly influence[ ] the jury." *Hill*, 749 F.3d at 1261 (quoting *United States v. Toledo*, 985 F.2d 1462, 1469-70 (10th Cir. 1993)). However, experts may offer opinions concerning the factual accuracy or veracity of an officer's incident report and subsequent statements. *See McCullon v. Parry*, 18-cv-00469-NYW, 2021 WL 4947237, at *7.

8

The Court will exclude the first opinion because—regardless of whether the opinion touches on Officer Ord's credibility—it will not assist the trier of fact. As previously stated, in assessing whether expert testimony will assist the trier of fact, a court should consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *United States v. Garcia,* 635 F.3d at 476–77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123). Powers herself recognizes that the information contained in the first opinion is "common knowledge." ECF No. 72-1 at 13. The jury does not need an expert to tell it whether someone inside a lighted home can see outside when it is dark out. Therefore, the first opinion will be excluded.

The second opinion, regarding Freeman's statements to officers during her police interview, will also be excluded. In that paragraph, Powers opines "[i]t is evident from the video interview of Freeman that she was trying to make sense of what occurred, which is common with witnesses to violent crimes." ECF No. 72-1 at 14. Powers is not endorsed as an expert on trauma response and has no personal knowledge of Freeman's experience or additional factors of the situation which may have impacted Freeman's state of mind. She does not lay a sufficient basis upon which she can opine, even based upon experience, as to the witness's state of mind. Thus, Powers will not be permitted to opine on Freeman's state of mind during her video statement or the credibility of her answers. *See Al-Turki v. Robinson,* No. 10-cv-02404-WJM-CBS, 2013 WL 603109, at *5 (D. Colo. Feb. 15, 2013) (excluding opinions about the defendant's state of mind because the expert was "without personal knowledge and [was] rendering an opinion which is

9

outside the scope of his expertise"); *see also Pinon Sun Condo. Ass'n v. Atain Specialty Ins. Co.,* No. 17-cv-01595-CMA-NRN, 2020 WL 1452166, at *8 (D. Colo. Mar. 25, 2020) ("Rule 702 does not allow an expert witness to speculate as to the intent or state of mind of the parties.").

The third and fourth opinions do not directly concern Officer Ord's credibility or state of mind, rather they challenge the factual accuracy of Officer Ord's statements. The Court will not exclude these opinions. Powers may discuss how her understanding of the facts differ from Officer Ord's statements, and the jury can then make its own determination of credibility concerning the allegedly false statements made by Officer Ord based on the evidence presented at trial. *See McCullon v. Parry*, 18-cv-00469-NYW, 2021 WL 4947237, at *7 (permitting expert to testify as to facts from which the jury can make its own determination of credibility concerning allegedly false or contradictory statements made by officer and permitting expert to "offer opinions that [the officer's] after-incident report was not accurate"). However, the Court cautions Plaintiff that Powers may not opine as to whether these factual discrepancies undermine Officer Ord's credibility, as that is for the jury to decide. *See id.* ("jury members do not need an expert to inform them whether one statement contradicts another or whether a statement contradicts video evidence"). Further, as described in Subsection C below, Powers may not state that Officer Ord's actions were "unreasonable" under the law.

### C. Legal Conclusions

Next, Officer Ord argues the Court should exclude Powers's statements and opinions that constitute legal opinions and speculation as to Officer Ord's actions.

10

Specifically, Officer Ord contends the following "opinions and statements constitute impermissible legal analysis or legal conclusions:"

- In "Opinions and Bases for Opinions", Ms. Powers states that "three questions need to be answered in this case: Did Ofc. Ord use good judgment when fired upon Andrew Huff? Were his actions in concert with established police practices and guidelines? Would a reasonably trained and prudent police officer likely have performed in the same manner as Ofc. Huff did given the same or similar circumstances as presented in this case? The answer to all questions is NO." *See*, Ex. A at p. 8.
- In the "Conclusion" Section, Ms. Powers states "[b]ased on my training and experience, it is my expert opinion that when Officer Ord fired upon Andrew Huff through a closed window of his home, his use of force was unreasonable." *See*, Ex. A at p. 16. Ms. Powers continues, "[i]t is astonishing that Ofc. Ord and the other involved officers responded to the Huff home at 11:30 p.m., under the cover of darkness, knowing other people in the house, including a small child, and made no attempt to call into the home." *See*, Ex. A at p. 18. Ms. Powers concluded, "[i]t's more astonishing that Ofc. Ord claimed he gave Andrew Huff time to surrender before he fired upon him, a fact that is not supported by his own body-worn camera. The actions of Ofc. Ord was unreasonable." *See*, Ex. A at p. 18.

ECF No. 72 at 9-10. Plaintiff contends "[n]one of the proposed opinions raised by Officer Ord contain improper legal conclusions or analysis." ECF No. 76 at 10. Plaintiff asserts that experts are permitted to give opinions that go to the ultimate issue and Powers may give her opinion, which is based on her training and experience, that Officer Ord's use of force was unreasonable or inappropriate under the circumstances. *Id.* at 11.

Plaintiff is correct that an expert's opinions are not excluded simply because those opinions touch on ultimate issues of law. *See Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988) (en banc) ("a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible"). However, Tenth Circuit law is clear that an expert may not offer opinions that tell the jury which conclusion to reach. *Id.; see also*

*United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005). ("[A]n expert may not simply tell the jury what result it should reach ...."). Further, "expert testimony is not admissible to inform the trier of fact as to the law that it will be instructed to apply to the facts in deciding the case." *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 596 F. Supp. 3d 1260, 1267 (D. Colo. 2022) (citing 4 Jack B. Weinstein et al., Weinstein's Federal Evidence § 702.03[3] (supp. 2019)).

Again, the Court will provide the parameters of what will and will not be permitted at trial. Whether Officer Ord's actions were objectively reasonable is a question that the jury must answer. *See Graham v. Connor*, 490 U.S. at 397 (in a Fourth Amendment excessive force case, "[t]he question is whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting [the officer], without regard to [the officer's] underlying intent or motivation."). While Powers may permissibly give her opinion as to whether Officer Ord's actions were consistent with prevailing standards in law enforcement, she may not tell the jury what result it should reach by opining as to whether Officer Ord acted reasonably under the law. *See Zuchel v. City & Cnty. of Denver, Colo.*, 997 F.2d 730, 742-43 (10th Cir. 1993) (permitting expert to offer opinion that officer's use of deadly force was inappropriate because the expert did not give an opinion on whether the conduct was unconstitutional, rather "he stated his belief that the conduct was inappropriate based on his understanding of generally accepted police custom and practice in Colorado and throughout the United States."); *see also Cox v. Wilson*, 2016 WL 11260309, at *4 ("a juror would be able to understand the circumstances of the

shooting incident and make his or her own reasonableness determination without needing [the expert's] opinion on what is or is not reasonable.").

Thus, Powers may testify that, based on her training and experience, Officer Ord's use of force was inappropriate under prevailing standards in law enforcement, but may not testify that Officer Ord's use of force was unreasonable under the law.

### D. Relevance

Officer Ord next seeks to exclude the following opinions contained in the Powers Report as irrelevant:

- "Opinions and Bases for Opinions" at Section (2) ("Failure of Officers to conduct basic investigative steps"), Ms. Powers stated that "Bejar-Gutierrez told Ofc. Marrero that law enforcement was inadvertently called by "Siri" last week when he and his wife had a verbal argument while at the Huff house. According to Bejar-Gutierrez Aurora officers responded to that call. All involved officers knew or should have known phone numbers in the Huff home and, given the information told to them by other officers, had previously responded to the street where the Huff brothers lived." See, Ex. A at p. 9.
- In "Opinions and Bases for Opinions" at Section (2) ("Failure of Officers to conduct basic investigative steps"), Ms. Powers' description of APD Directives Manual Policy. *See*, Ex. A at p. 10.
- In "Opinions and Bases for Opinions" at Section (5) ("Failure to identify themselves as law enforcement"), Ms. Powers stated, "[a]ccording to Weather Underground, the air temperature was 15 degrees Fahrenheit at the nearest weather station." See, Ex. A at p. 13. Ms. Powers also stated that "[i]t is common knowledge that when outside of a home or building, during darkness and the lights are on inside the home, any person looking out a front window, as in this case, would not be able to see who or what is going on outside." *Id.*
- Any reference made by Ms. Powers in her Expert Report pertaining to or addressing the credibility of Mr. Bejar and any and all references to Mr. Bejar's criminal background.
- Any reference or opinion pertaining to ER staff at the hospital calling Aurora Police Department to report an assault victim with serious bodily injury.

13

ECF No. 72 at 11-12.

Plaintiff contends each of these opinions are relevant to the claims and issues of this case. Specifically, Plaintiff argues the first opinion is "directly relevant to the issues of reckless creation of the danger and training failures in that Officer Ord and his colleagues failed to simply call Plaintiff and speak to him about the matter before surprising him at his home late at night." ECF No. 76 at 12. As to the second opinion, Plaintiff argues it is "directly relevant to Officer Ord and his colleagues' failure to do any sort of background check or follow-up within Aurora's reports management system before going to Plaintiff's house late at night unannounced and thus unreasonably creating a dangerous situation that could have been entirely avoided by a simple telephone call." *Id.* As to the third opinion, Plaintiff contends the weather information is "directly relevant Officer Ord's objective reasonableness of the surrounding circumstances at the time of his use of deadly force against Plaintiff." *Id.* Plaintiff contends the fourth opinion, which concerns the housemate whose call to police resulted in the shooting incident, contains relevant comments and opinions regarding "the failures by Officer Ord and his colleagues to take basic investigative steps and gather appropriate information before surprising Plaintiff at his home late at night" and "goes to the issue of the unreasonable creation of the danger . . . ." *Id.* at 13. Finally, Plaintiff argues the opinions related to ER staff calling Aurora police "relate again to what Aurora and its officers knew or should have known at the time. In particular, this information goes to the Defendants' defense as to why Officer Ord and his team responded to Plaintiff's home in the way they did." *Id.*

"Relevant expert testimony must logically advance a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d at 477 (internal quotations omitted). In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony "is within the juror's common knowledge and experience," and "whether it will usurp the juror's role of evaluating a witness's credibility." *United States v. Rodriguez–Felix*, 450 F.3d at 1123 (footnote omitted). Pursuant to Rule 702, courts must conduct a "common-sense inquiry" into whether a juror would be able to understand certain evidence without specialized knowledge. *United States v. Becker*, 230 F.3d 1224, 1231 (10th Cir. 2000).

As to the third opinion, jurors do not need an expert to inform them of the temperature and whether people keep their doors or windows open in cold weather. Such information is plainly within a juror's common knowledge and experience. Accordingly, the third opinion will be excluded as irrelevant.

As to the first, second and fifth opinions, the Court finds these opinions irrelevant. Plaintiff's argument that these opinions go to the issue of whether Officer Ord recklessly created the need to use deadly force is unavailing. The Tenth Circuit has held that the reasonableness of use of force depends not only on whether officers were in danger at the precise moment they used force, "but also on whether the officers' own reckless or deliberate conduct <u>during the seizure</u> unreasonably created the need to use such force." *Cox v. Wilson*, 971 F.3d 1159, 1171 (10th Cir. 2020) (emphasis added). "To determine if the officer unreasonably created the need to use force" courts must "examine conduct

that was <u>immediately connected to the use of force</u>." *Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 790 (10th Cir. 2022) (quotation omitted) (emphasis added); *see also Allen v. Muskogee, Okl*., 119 F.3d 837, 840 (10th Cir. 1997) ("The excessive force inquiry includes not only the officers' actions at the moment that the threat was presented, but also may include their actions in the <u>moments leading up to the suspect's threat of force</u>.") (emphasis added); *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001) ("in order to constitute excessive force, the conduct arguably creating the need for force must be <u>immediately connected</u> with the seizure and must rise to the level of recklessness, rather than negligence") (emphasis added); *Bella v. Chamberlain*, 24 F.3d 1251, 1256 (10th Cir. 1994) (refusing to scrutinize events occurring one hour before the actual seizure and noting the events were not immediately connected with the seizure).

Whether Officer Ord knew about Defendant's inadvertent call to law enforcement the week before, about ER staff calling to report an assault victim earlier that day, or about the events that occurred earlier that day between officers and Plaintiff is irrelevant because such information has no bearing on the conduct immediately connected to the use of force. Thus, the first, second, and fifth opinions will be excluded.

Finally, as to the fourth opinion, the Court will exclude opinions concerning Bejar's credibility. As described above, witness credibility is not a proper subject of opinion testimony. Further, Bejar's criminal background has no bearing on the reasonableness of Officer Ord's use of force against Plaintiff and is therefore irrelevant.

### E.     Violations of Training, Policy, or Procedure

Officer Ord next argues for the exclusion of any opinions as to whether Officer Ord may have violated APD policies or procedures. ECF No. 72 at 12-13. Officer Ord notes that Powers does not directly address the issue of whether or not Officer Ord may have violated any policies or procedures of the APD, but that the Powers Report contains a reference to the APD Directives Manual Policy 17.2. *Id.* at 13. Plaintiff responds that Powers makes no comment or opinion that Officer Ord violated Policy 17.2 or any other policy. ECF No. 76 at 14. Rather, Plaintiff seeks to introduce the testimony to provide context to the jury by showing that Aurora had a policy and system that Officer Ord and/or his colleagues could have used to do basic background checks and follow-up, specifically concerning the earlier officer contact with Plaintiff.

Tenth Circuit law is clear that whether an officer violated police department policy or standard police practices is irrelevant as to the question of whether the officer has violated the Fourth Amendment. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1163–64 (10th Cir. 2005) ("That an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefore irrelevant."). Thus, although it does not appear that Powers intends to introduce such testimony, the Court nevertheless cautions Plaintiff that any such testimony will be excluded.

To the extent the only testimony related to APD policy is Powers's opinion regarding APD Directives Manual Policy 17.2, that opinion has already been excluded as irrelevant for the reasons described above. See *supra* Section III.D.

### F.     Methodology

Finally, Officer Ord argues that "[i]f Ms. Powers' opinion in this case was based on the articles, bulletins and internet sites she listed in the 'Methodology Used in Formulating Opinions' Section of her Report, Ms. Powers' entire opinion should be excluded as it was not based on relevant and reliable authority." ECF No. 72 at 15. Plaintiff responds that, in making this argument, Officer Ord ignores the portions of the Powers Report that expressly state her opinions are based not on any articles, bulletins, or internet sites, but rather her education, training, and experience. ECF No. 76 at 15. The Court agrees.

Although Powers lists the various policing news, practices, guidelines, and trends that she is familiar with, she explicitly states as her "Bases for Opinions" that:

> My opinions are based on my education, training, and experience, as well as my review of the information and materials related to this case. My role as a police practices expert is to assist in understanding what constitutes "established police practices and guidelines" and how these practices and guidelines come into play during police-citizen encounters.

ECF No. 72-1 at 8.

Powers is undoubtedly qualified as a police use-of-force expert. She was a police officer for fourteen years has been consulting as an expert in police, security, and public safety practices since 2011. She holds the following certifications: certified litigation specialist in police practices, Americans for Effective Law Enforcement; certified force science analyst, Force Science Institute, Minesota State University at Mankato; certified instruction in the management of excited delirium/agitated chaotic events and the prevention of arrest-related in-custody deaths, Institute for the Prevention of In-Custody Deaths, Henderson, Nevada; certified defense tactics instructor, FBI Method, Monterey,

18

California; and Certified Taser Master Instructor and Armorer, Scottsdale, Arizona. As a former police officer, supervisor, and manager, she has been trained in almost all aspects of policing, including the use of firearms and lethal force. Powers was also a defensive tactics instructor for over 12 years of her law enforcement career and has trained hundreds of police officers on proper and improper tactics. She has written policy on the use of force and has evaluated hundreds of use of force cases and advised command staff of the results of those investigations. Experts with similar experience and qualifications have been found as qualified as use-of-force experts. *See, e.g., Talley v. City & Cnty. of Denver*, No. 16-CV-02327-JLK, 2021 WL 5514612, at *4 (D. Colo. July 1, 2021) (finding it "obvious" that former police officer with similar experience as Powers is "qualified to opine on proper use-of-force policies and practices."). Powers has sufficiently explained how her "experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note to 2000 amendments. Thus, the Powers Report will not be excluded on this basis.

### IV.   CONCLUSION

For the reasons set forth herein, the Court ORDERS as follows:

1) Defendant's Motion, ECF No. 72, is GRANTED IN PART and DENIED IN PART as stated in the Order.

DATED: March 15, 2024

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge